1  DAYLE ELIESON
   United States Attorney
2  MEGAN RACHOW
   Nevada Bar No. 8231
3  Assistant United States Attorney
   400 South Virginia Street, Suite 900
4  Reno, Nevada  89501
   (775) 784-5438
5  Megan.Rachow@usdoj.gov

6  *Representing the United States of America*

**FILED**

**JUL 2 5 2018**

**U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA**
BY_____DEPUTY

7             UNITED STATES DISTRICT COURT
                   DISTRICT OF NEVADA
8
                                          **3:18-mj-115-WGC**

9  UNITED STATES OF AMERICA,

10              Plaintiff,                 COMPLAINT FOR VIOLATION OF:

11       v.                                Title 21, United States Code, Sections
                                           841(a)(1) and (b)(1)(A)(ii)(II) and (viii)–
12  HASEEB UR REHMA MALIK, and             Possession with the Intent to Distribute a
                                           Controlled Substance—Cocaine and
13  ABDUL MAJID,                           Methamphetamine (Count One)

14              Defendants.

15

16        BEFORE the Honorable William G. Cobb, United States Magistrate Judge, Reno,

17  Nevada, the undersigned complainant being first duly sworn states:

18                              <u>Count One</u>

19        (Possession with the Intent to Distribute a Controlled Substance—Cocaine and

20                              Methamphetamine)

21        On or about July 19, 2018, in the State and District of Nevada, HASEEB UR REHMA

22  MALIK and ABDUL MAJID, defendants herein, did knowingly and intentionally possess with

23  the intent to distribute at least five (5) kilograms or more of a mixture or substance containing a

24  detectable amount of cocaine, a Schedule II controlled substance and at least 500 grams or more

                                          1

of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; all in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii)(II) and (viii).

Complainant as a Special Agent with the Drug Enforcement Administration states there is probable cause to arrest the above-named defendants as set forth in the attached affidavit.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

AFFIDAVIT OF KAREN E. ROSSI

IN SUPPORT OF WARRANT APPLICATION

1.      I, KAREN E. ROSSI of the Drug Enforcement Administration (DEA), Reno, Nevada, being duly sworn, state as follows:

2.      I am currently assigned as a Special Agent with the DEA Reno Resident Office. I am a Special Agent of the United States Department of Justice, DEA, and have been so employed since May of 1988.  During my employment with the DEA, I have been assigned to the Los Angeles Field Division, Santa Barbara Resident Office, and am currently assigned to the Reno Resident Office in Reno, Nevada, since September 1996.

3.      I received specialized training at the DEA training academy located in Quantico, Virginia, in regards to the identification of narcotic substances and the operation of drug trafficking organizations. I have been involved in the investigations of various individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. I have participated in the preparation of affidavits and execution of numerous search and arrest warrants for violations of Federal and State Drug Laws during my approximate 30 years of federal law enforcement. I have conducted surveillance operations and have become familiar with the methods used by individuals engaged in manufacturing, trafficking, and use of controlled substances.

4.      During the course of my law enforcement career with DEA, I have worked in the company of other experienced law enforcement officers and have discussed their investigative techniques and their investigative experiences. I also have had numerous contacts with other law enforcement agents and police officers concerning the methods used by persons dealing in controlled substances. My experience includes contacts with people associated with the illegal

1    trafficking of controlled substances and knowledge of their methods used in obtaining, storing,

2    manufacturing, transporting, and distributing illegal narcotics as well as their record keeping

3    practices in concealment of the proceeds derived from the sale of controlled substances.

4         5.    The information contained in this affidavit is based upon my personal

5    observations, investigation or information relayed to me by other law enforcement officers. The

6    information provided in this affidavit is not each and every fact known to me, but rather,

7    sufficient information to establish probable cause.

8         6.    Because this affidavit is being submitted for the limited purpose of establishing

9    probable cause for the issuance of a criminal complaint, I have not set forth each and every fact

10   I learned as a result of this investigation. Rather, I have set forth only those facts I believe are

11   necessary to establish probable cause that a violation of federal law has been committed.

12        7.    Based on the investigation described in this affidavit, there is probable cause to

13   believe that HASEEB UR REHMA MALIK ("Malik") and ABDUL MAJID ("Majid") did

14   commit the following offenses which violate federal criminal law, specifically, Possession with

15   the Intent to Distribute a Controlled Substance—Cocaine and Methamphetamine, in violation of

16   Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(ii)(II) and (viii).

17                    **FACTS SETTING FORTH PROBABLE CAUSE**

18        8.    On July 19, 2018, at approximately 9:04 PM, Trooper Chris Garcia observed a

19   Commercial Motor Vehicle (CMV) traveling Northbound on US93 near mile marker 58 White

20   Pine. He visually estimated the CMV to be travelling 70 miles per hour (MPH) which is in excess

21   of the 60 MPH posted speed limit. He confirmed the vehicle to be traveling at 71 MPH by Radar

22   and locked the target vehicle's speed in at 71 MPH on his Radar. Trooper Garcia conducted an

23   enforcement stop on the CMV, the driver brought the CMV to a stop at approximately mile

24

1  marker 59 White Pine. The aforementioned location is in the County of White Pine, State of

2  Nevada.

3        9.        Trooper Garcia made a passenger side approach to the vehicle, the dirt shoulder

4  in the area of the stop was steep, making it difficult for him to make contact with the unknown

5  number of occupants in the CMV. The engine of the CMV was still on while he was standing at

6  the passenger door attempting to make contact, the driver eventually moved to where Trooper

7  Garcia could see him at the passenger side window.  Trooper Garcia asked him "do you mind

8  opening this" referring to the door, the driver then opened the passenger door. Trooper Garcia

9  then stepped up on to the steps for ease of contact. Trooper Garcia asked the driver if there was

10  anyone in the back and observed the curtains to the sleeper area to be closed. The driver indicated

11  that his co-driver was in the back and Trooper Garcia had the driver open the curtain and

12  observed a male subject in the sleeper area of the tractor. He identified himself as Trooper Garcia

13  with the Highway Patrol and advised the driver that the reason for the stop was his speed. During

14  his contact with the occupants, he detected the odor consistent with that of marijuana emitting

15  from within the passenger compartment and /or driver. He asked the driver for his license and

16  paperwork. While he was retrieving the requested items, Trooper Garcia asked if they had any

17  marijuana in the truck which the driver quickly denied. He then asked the other occupant if he

18  had any marijuana, and the passenger also denied having any. Trooper Garcia asked the driver

19  if he smokes and the driver indicated that he does smoke. As Trooper Garcia was referring to

20  marijuana, he clarified by asking the driver if he smokes marijuana, he again denied it.  The

21  trooper then asked if he smokes on his days off and the driver admitted to smoking marijuana

22  by saying "yeah in Calgary, yeah." Trooper Garcia then asked the other occupant if he also

23  smokes weed, he stated that he does sometimes. The trooper asked if they had a little bit in the

24  truck still and advised them that the truck smells like it. The driver then admitted to having some

3

1  marijuana in the truck that morning. Trooper Garcia asked him where it was, he indicated that

2  he had it in his pack of cigarettes, but that he threw the rest of it out. The driver also admitted to

3  smoking marijuana earlier in the day, approximately six (6) or seven (7) hours earlier. Trooper

4  Garcia then returned to his patrol vehicle.

5        10.    The driver of the CMV was identified by his Alberta Driver's License as Malik,

6  Haseeb Ur Rehma, "Malik." The second occupant was later identified by his Canadian Passport

7  and his Alberta Operator's License as Majid, Abdul, "Majid."  When Trooper Garcia returned

8  to his patrol vehicle, he made contact with Commercial Trooper A. Zehr #201 inquiring about

9  the situation involving the marijuana and a CMV. Trooper Zehr advised that it is an automatic

10  24-hours out of service and that they would be able to do a probable cause search. As Trooper

11  Garcia is not a commercial trooper and did not have any commercial enforcement specific

12  certifications, he was unsure if he was able to place the driver out of service or if a commercial

13  unit was needed. Trooper Zehr indicated that after he was done with the stop he was on, that he

14  would be en route to assist Trooper Garcia.  Trooper Zehr arrived on scene of the stop at

15  approximately 9:36 PM and remained on scene throughout the remainder of the contact. Trooper

16  Garcia advised Trooper Zehr of the specifics of the stop. The troopers then went to the CMV and

17  had both occupants exit. Trooper Zehr asked Malik and Majid who smoked the marijuana. Malik

18  the driver, admitted to Trooper Zehr that he was the one who smoked it, this time he indicated

19  that it was three (3) or four (4) hours earlier. Trooper Zehr inquired as to where the marijuana

20  was. Malik again claimed that he threw it out. Majid then asked Malik if he was sure that it

21  wasn't inside in the garbage or in the pack still, Malik continued to say that he was sure he threw

22  it out.

23        11.    Trooper Zehr advised Trooper Garcia that they had probable cause to search the

24  CMV as it is a zero tolerance to possess or be under the influence of Marijuana in a CMV and

4

that according to Commercial Federal Regulations adopted by the state of Nevada under NAC 706.247, they should place the driver out of service for 24 hours. According to the Federal Motor Carrier Safety Act, "Marijuana continues to be classified as a Schedule I controlled substance by the Drug Enforcement Administration (DEA) in 21 CFR § 1308.11. Under the Federal Motor Carrier Safety Regulations (FMCSRs), a person is not physically qualified to drive a CMV if he or she uses any Schedule I controlled substance such as marijuana. (See 49 CFR §§ 391.11(b)(4) and 391.41(b)(12)). In addition to the physical qualification requirements, the FMCSRs prohibit a driver from being in possession of or under the influence of any Schedule I controlled substance, including marijuana, while on duty, and prohibit motor carriers from permitting a driver to be on duty if he or she possesses, is under the influence of, or uses a Schedule I controlled substance. (See 49 CFR §§ 392.2 and 392.4)"   Furthermore, the legalization of marijuana use by States and other jurisdictions does not supersede the federal regulations that govern the trucking industry. Based on this information, Trooper Garcia began a probable cause search of the CMV.

12.     During the search of the sleeper area, Trooper Garcia opened a built in cabinet and observed white plastic trash bags containing numerous items that appeared to be similar in shape and size. At first look it looked like the trash bags possibly contained paperback books. Trooper Garcia removed one of the unknown items out of one of the bags and observed it to be one of multiple items that were similar in shape and size. The packaging on the exterior consisted of masking tape, which based on Trooper Garcia's training and experience, was consistent with that of illegal narcotic packaging. He placed the package back in the bag, exited the CMV and directed Trooper Zehr to the cabinet to see the located items. Once Trooper Zehr located the said items, he asked for a knife. Trooper Zehr made a small cut into one of the packages which revealed a white powdery substance.

13.     Trooper Zehr retrieved a NIK Type G Test kit from his patrol vehicle and used the kit test on a sample of the white powdery substance that he removed from the package he cut into. The substance tested presumptively positive for the presence of Cocaine. Trooper Garcia then advised Malik and Majid that they were both under arrest and read them their *Miranda* warnings. Both invoked their rights indicating they did not want to answer any questions. The troopers decided that based on the suspected amount of illegal narcotics present that they would stop the search at the located items, have the CMV transported to town, seal the CMV and apply for a search warrant.

14.     Trooper Zehr placed Nevada Highway Patrol trailer seal no. 0001433 on the CMV's trailer. Battleborn Towing arrived on scene to transport the CMV to their tow yard located in Ely. Trooper Garcia followed the CMV as it was transported to the tow yard, maintaining visual contact with the CMV until it arrived at the tow yard. Trooper Garcia then sealed the CMV pending a search warrant. He applied for a search warrant from the Ely Justice Court Justice of the Peace Stephen Bishop. Justice of the Peace Stephen Bishop granted the search warrant of the 2018 Freightliner Cascadia Alberta commercial registration E11142 and the attached 53' white box trailer with Alberta commercial registration 5MR394.

15.     At approximately 12:49 AM on July 20, 2018, Trooper Garcia and Trooper Zehr executed the search warrant on the aforementioned CMV. During the search of the tractor, in the same cabinet the suspected Cocaine was located in, there was packaging items including a box of white plastic trash bags, two pair of latex gloves, packing tape, and items possibly used to conceal odor including large packs of Cayenne Pepper and three cans of Glade air freshener. The located box of white plastic trash bags was consistent with that of which the suspected Cocaine was located. Cayenne pepper is known to be used in the packaging process of illegal narcotics in an attempt to conceal the odor of illegal narcotics from law enforcement and/or law

6

1    enforcement canines. Located in a black garbage bag in the tractor was a pair of gloves that

2    appeared to have been used, as they were turned inside out, the gloves appeared to match the two

3    pair of latex gloves located in the cabinet with the packaging supplies.

4         16.    Trooper Garcia raised the lower bed which revealed a storage area under the bed.

5    Located in the center of the storage area were two (2) large suitcases black and blue in color.

6    Upon opening the suitcases, both contained numerous packages wrapped in a saran wrap type

7    plastic. The packaging was consistent with that of packaging of illicit controlled substances for

8    transport. Both suitcases and their contents were taken for evidence. On the top bunk in the

9    sleeper, Trooper Garcia observed blankets stacked on top of unknown items that were toward

10   the passenger side of the sleeper area. Upon moving the blankets, he observed three black duffel

11   bags. Upon opening the duffel bags, all three duffel bags contained numerous packages sealed

12   in Food Saver type packaging, the packaging was consistent with that of packaging of illicit

13   controlled substance for transport. Upon closer look, the troopers found that some of the

14   packages had been cut into. The three black duffel bags and their contents were taken for

15   evidence.

16        17.    On July 20, 2018, Trooper Garcia along with Trooper K. Barney, Trooper T.

17   Deeds, Trooper E. Boynton, Sgt. Brewer and Detective T. Sifre processed the suspected

18   controlled substances which included testing, weighing, labeling and sealing for evidence. The

19   two substances identified by presumptive testing were Cocaine and Methamphetamine. At the

20   conclusion of the packaging, testing and weighing process it was determined that a total of

21   61,403 GG (135.36 LBS) of suspected Cocaine and a total of 51,833 GG (114.27 LBS) of

22   suspected Methamphetamine were collected from the CMV.

23   ///

24   ///

7

## CONCLUSION

18.          Based on the foregoing facts and evidence, I believe that probable cause exists to believe that HASEEB UR REHMA MALIK ("Malik") and ABDUL MAJID ("Majid") did commit the following offense which violates federal criminal law, specifically, Possession with the Intent to Distribute a Controlled Substance—Cocaine and Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(ii)(II) and (viii).


I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.



Karen Rossi, Special Agent
Drug Enforcement Administration


SUBSCRIBED and SWORN to before me on
this 25ᵗʰ day of July, 2018.



HONORABLE WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

8